UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MONTREAL MANNING** | **CIV. ACTION NO. 3:22-01460** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **EVERETT HUFF, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Rule 12(b)(6) motion for partial dismissal [doc. # 20] filed by Defendant Sheriff Gary Gilley. The motion is opposed. For reasons detailed below, it is recommended that the motion be GRANTED.

## Background

On June 1, 2022, Plaintiff Montreal Manning ("Manning") filed the instant lawsuit against Richland Parish Detention Center ("RPDC") corrections officer, Everett Huff ("Huff"), to recover damages for injuries that he sustained whilst incarcerated at the RPDC. (Compl.). Specifically, Manning alleges that on June 1, 2021, he was the victim of an assault and battery perpetrated by Huff that resulted in severe injuries requiring medical treatment. *Id*., ¶¶ 1, 3-4, 11-12. After the attack, however, Huff declined to obtain medical attention for Manning, which delayed Manning's receipt of medical treatment until the next shift. *Id*., ¶ 13. Manning contends that Huff's actions were the result of RPDC personnel's failure to properly train and supervise Huff. *Id*., ¶ 16.

Manning brought claims against Huff under 42 U.S.C. § 1983 for violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and pursuant to

"basic tort law." *Id*., ¶¶ 17-18, 20. He seeks to recover compensatory and punitive damages, plus reasonable attorney's fees and costs. *Id*., Prayer.

Over one year later, on June 21, 2023, Manning filed his First Supplemental and Amending Complaint ("FSAC") wherein he joined Defendant, Gary Gilley, individually, and in his official capacity as Richland Parish Sheriff (hereinafter, "Gilley" or "Sheriff Gilley"). (FSAC [doc. # 16]). Manning alleges that Gilley was Huff's employer at the time of the attack, but that Gilley fired Huff when criminal charges were brought against him. *See* FSAC, ¶¶ 13-A, 13-B.[1] Manning contends that Gilley is liable for Huff's actions under a theory of respondeat superior and pursuant to 42 U.S.C. § 1983 for "lack of training and oversight." *Id*., ¶¶ 13-E and 13-F.

On July 11, 2023, Gilley filed the instant motion to dismiss Manning's § 1983 claims asserted against him, in both his individual and official capacities, for failure to state a claim upon which relief can be granted.[2] [doc. # 20].

On August 1, 2023, Manning filed his opposition brief wherein he expanded his pleadings to state that "Huff was given no or virtually no employee training prior to being placed in the correctional center as an employee." (Pl. Opp. Memo. [doc. # 22]). He added that Manning since had learned that Gilley had rehired Huff as a correctional officer, which served to illustrate Gilley's deliberate indifference to the rights of others. *Id*. Manning speculated that the discovery process will reveal a multi-year pattern of violations and inadequate training, which

---

[1] On September 28, 2021, Huff pled guilty to simple battery on Manning. *Id*., ¶ 13-C.

[2] The motion does not address Manning's state law vicarious liability claims. (M/Dismiss, Memo., pg. 1).

2

contributed to Huff's failure to control and moderate his own actions. *Id*. Manning alternatively requested an opportunity to allege additional facts to support his claims against Gilley. *Id*.

Gilley filed his reply brief on August 2, 2023. (Def. Reply Brief [doc. # 23]). Accordingly, the matter is ripe.

## Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. FED. R. CIV. P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that

support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010) (citation omitted).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*.

## Analysis

A § 1983 suit may be brought against a party in that party's official or individual/personal capacity, as well as against a government entity. *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). A § 1983 *personal-capacity* suit seeks to impose liability on a "government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991) (emphasis added). On the other hand, a suit against a party in that party's *official-capacity* is generally "another way of pleading an action against an entity of which an officer is an agent." *Goodman v. Harris Cty.,* 571 F.3d at 395 (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, n.55 (1978). Therefore, an official-capacity suit is treated as a suit against the real party in interest—the government

entity—and not against the official personally. *Id.* This type of claim also is known as a *Monell* claim. *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 307 (5th Cir. 2023).

In this case, Manning sued Sheriff Gilley, in both his "individual" and "official" capacities under 42 U.S.C. § 1983. Furthermore, Gilley invoked qualified immunity as to the individual capacity claims asserted against him. The court will address each claim, in turn.

**I.     Individual Liability under § 1983**

a)     General Principles

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Id.* "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.* (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020) (citation and internal quotation marks omitted). Accordingly, a claim against a state actor in his personal-capacity need not be attributed to a governmental "policy or custom." *Hafer, supra*.

      b)      <u>Qualified Immunity</u>

In addition, when, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). The qualified immunity doctrine balances two often conflicting interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (citations and internal quotation marks omitted).

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense. However, once raised by a defendant, it devolves upon the plaintiff to negate the defense by showing that the official's conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citation omitted). Plaintiff's burden is two-pronged. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). First, a plaintiff must demonstrate that

6

defendant(s) violated a constitutional right under current law. *Id*. "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*. (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

A law is clearly established when there exists "controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013) (quoted source omitted). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id*. (citations and internal quotation marks omitted). Nonetheless, there is the "rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (citations and internal quotation marks omitted).

In the end, the question becomes whether the right is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Hogan, supra* (citations and internal quotation marks omitted). Because it is plaintiff's burden to establish that the challenged conduct violated clearly established law, the district court may, but is by no means obliged to undertake the clearly established law analysis on its own. *See Joseph,*

*supra*.

When responding to a defendant's invocation of qualified immunity within the context of a motion to dismiss, the plaintiff need not "exceed the short-and-plain-statement standard of Rule 8." *Arnold, supra* (citation omitted). Instead, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). In other words, plaintiff must plead qualified immunity facts with the "minimal specificity" required by *Twombly* and *Iqbal*. *Arnold, supra* ("an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard.").

c) <u>Supervisory Liability</u>

In his brief, Manning admitted that he does not contend that Gilley was personally involved in the battery against him. (Pl. Opp. Memo., pg. 2). Instead, he argues that Huff's training and supervision were not objectively reasonable. *Id*.

The court emphasizes that supervisory officials are not liable under § 1983 for the actions of subordinates under any theory of vicarious liability. *Turner v. Lieutenant Driver*, 848 F.3d 678, 695 (5th Cir. 2017) (citation omitted); *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."). Rather, individual liability against a supervisor under § 1983 obtains only "if (1) [the supervisor] affirmatively participates in the acts that cause the constitutional deprivation, or (2) [the supervisor] implements unconstitutional policies that causally result in the constitutional injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 620 (5th Cir. 2018) (quoting *Gates v.*

8

*Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)); *see also Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (citation omitted).

In the absence of the supervisor's personal participation in the events at issue, as conceded here, a § 1983 plaintiff must demonstrate that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Mesa, supra*; *Smith v. Packnett*, 339 Fed. App'x. 389, 393 (5th Cir. 2009) (citation omitted). Deliberate indifference entails a "conscious choice to endanger constitutional rights." *Id*. (citation and internal quotation marks omitted). Failure to adopt a policy may constitute deliberate indifference. *Porter v. Epps*, 659 F.3d 440, 446–47 (5th Cir. 2011) (citation omitted).

The Fifth Circuit has emphasized that,

> deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. To establish that a state actor disregarded a known or obvious consequence of his actions, there must be actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights and the actor nevertheless choose[s] to retain that program. A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference, because [w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

*Porter*, *supra* (internal quotation marks and citations omitted); *Mesa, supra* (deliberate indifference generally requires more than a single instance of lack of training or supervision that results in a constitutional violation).

e)     Discussion

In this case, Manning did not allege any facts regarding any specific training or supervision omission that led to the deprivation of his rights. *See Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 477, 483 (5th Cir. 2021) (plaintiff failed to establish the first element of failure to train/supervise claim where he did not include any allegations that the municipality failed to train the officers). In addition, Manning did not allege any facts to support a pattern of unconstitutional violations by untrained employees as required to establish Sheriff Gilley's knowledge of, and, therefore, deliberate indifference to his purportedly inadequate training and supervision practices.[3]

To be sure, "under certain circumstances, § 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848–49 (5th Cir. 2009) (quoting *Brown v. Bryan Co., Okla.,* 219 F.3d 450, 458 (5th Cir. 2000)). To rely on this exception, however, "a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." *Roberts v. City of Shreveport*, 397 F.3d 287, 295–96 (5th Cir. 2005) (citing *Brown v. Bryan County*, 219 F.3d at 461).

In *Brown v. Bryan County*, the Fifth Circuit held that the single-incident exception was

---

[3] Apparently recognizing his pleading insufficiency, Manning speculates that the discovery process will reveal a "multi-year pattern of violations." It is manifest, however, that "a plaintiff asserting constitutional claims against an officer claiming QI must survive the motion to dismiss without *any* discovery." *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022). This rule is consistent with the maxim that qualified immunity must be adjudicated at the earliest possible opportunity. *Id*.

10

satisfied where the deputy had no training. *Brown, supra*. In *Brown*, however, the sheriff hired one of his relatives as a deputy, despite his knowledge that the deputy had multiple prior arrests and convictions for violent crimes, plus other reckless behavior, and an outstanding arrest warrant. *Roberts, supra* (citing *Brown, supra*). Thereafter, the sheriff provided the deputy with no training whatsoever, only to have the deputy use a violent "arm bar" technique to take down an unarmed suspect. *Id*. Needless to say, those circumstances are not alleged here.

The court further emphasizes that the "single incident" exception is limited to those cases where the government actor received "no training whatsoever," rather than merely a failure to provide training in a particular area. *See Pena, supra* (distinguishing *Brown, supra*). In his brief, Manning asserted that Huff received "either no or virtually no employee training . . ." However, he did not include this allegation in his amended complaint. Moreover, "virtually no" training is not equivalent to "no training whatsoever."

In sum, Manning has not alleged requisite facts to support a constitutional violation under § 1983 against Gilley in his individual capacity. Even if he had, Manning has not shown, via controlling or even a consensus of persuasive authority, that any reasonable officer in Gilley's position would have known that their conduct violated clearly established law at the time of the incident. Accordingly, Gilley is entitled to qualified immunity and the dismissal of Manning's § 1983 claim asserted against him in his individual capacity.

## II. § 1983 Official Capacity Claim against Sheriff Gilley

To establish municipal liability under § 1983, a plaintiff must prove that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Vardeman v. City of Houston*, 55 F.4th 1045, 1052 (5th Cir.

11

2022) (quoting *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)); *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94 (1978). "A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it through some official action or imprimatur." *Peterson*, 588 F.3d 838 at 847 (internal quotations omitted). Further, municipalities are not liable under § 1983 on the theory of *respondeat superior*. *Id.*; *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985).

> The official policy requirement may be met in various ways. An "official policy" means:
>
> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). The existence of a custom or policy may be shown by demonstrating (1) a pattern of unconstitutional conduct by municipal actors or employees; or (2) a single unconstitutional act by a final policymaker. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010).

"In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). "To proceed beyond the pleading stage, a complaint's

description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña*, 879 F.3d at 622 (citation and internal quotation marks omitted).[4]  Therefore, to plausibly plead a widespread practice as required to support municipal liability, a plaintiff must describe more than the lone incident that gave rise to his own injury. *Id*. (citation omitted).

  Here, Manning does not allege facts to show either a pattern of unconstitutional conduct by RPDC deputies, or a single unconstitutional act by a final policymaker.  Accordingly, Manning's allegations fall materially short of demonstrating a custom or practice that is so frequent and prevalent that Sheriff Gilley must have been aware of and accepted the disputed conduct.  *See Thompson v. Hedrick*, 838 Fed. App'x. 121, 123 (5th Cir. 2021) (plaintiff did not plead facts to show that the complained-of policy had been applied in a widespread fashion or that it caused him to be denied medical care); *Peña, supra* (plaintiff must do more than describe the incident that gave rise to his injury); *Prince v. Curry*, 423 Fed. App'x. 447, 451 (5th Cir. 2011) (existence of one or two similarly situated incidents does not plausibly suggest the existence of an unconstitutional policy or custom); *see also Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (citation omitted).

  A failure to train or supervise claim also may be asserted as another type of *Monell* claim. *Hutcheson v. Dallas Cty., Texas*, 994 F.3d 477, 482 (5th Cir. 2021); *see Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010) ("The standard applicable to a failure-to-train claim is the

---

[4] For example, an allegation that the underlying unconstitutional act represents "a persistent, widespread practice" by city employees that is "so common and well settled as to constitute a custom . . ." of the city does not contain any specific *facts* as required to state a claim for relief. *Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020).

same as the standard for municipal liability."). However, the standard essentially is the same as the failure to train claim in the individual capacity context, for which Manning has failed to allege requisite facts. *See* discussion, *supra*.

Finally, Manning noted in his brief that Gilley had rehired Huff as a correctional officer. This unpled allegation potentially implies liability under a ratification theory, which provides that a municipality may be held liable "if the policymaker approves a subordinate's decision and the basis for it . . ." *Allen v. Hays*, 65 F.4th 736, 749–50 (5th Cir. 2023). To succeed on a claim of excessive force via the ratification theory, a plaintiff would need to show that the municipality's act of ratification endorsed the use of excessive force. *Id*. " In other words, the constitutional violation itself must have been ratified." *Id*.

Sheriff Gilley's unpled rehiring of Huff does not demonstrate a ratification of Huff's use of excessive force where, as here, Manning further alleged that Huff had been fired in the wake of the attack. Needless to say, a discharge, and the concomitant loss of income can hardly be characterized as an endorsement or ratification of Huff's assault and battery on Manning. Further, while Gilley's purported rehiring of Huff may have deliberate indifference implications for any *future* constitutional violations committed by Huff, Manning has failed to show that the rehiring supports *his Monell* claim.

In sum, Manning fails to state a claim for municipal or *Monell* liability under § 1983 against Sheriff Gilley, in his official capacity, and, thus, dismissal is required.

### **Amendment**

At the conclusion of his brief, Manning requested an opportunity to allege further facts to support his claims against Gilley. Certainly, a court is required to freely grant leave to amend

when justice so requires it. Fed. R. Civ. P. 15(a)(2). Here, however, Manning already has amended his complaint once. Moreover, a court may deny leave when the plaintiff neither provides a copy of the proposed amended complaint, nor explains how the proposed pleading would cure the deficiencies in the initial complaint. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021).

Accordingly, Manning's alternative request to set forth unspecified facts does not comply with Rule 15 and is DENIED.[5]

## Conclusion

For the above assigned reasons,

IT IS RECOMMENDED that the motion for partial dismissal [doc. # 20] filed by Defendant Sheriff Gary Gilley be GRANTED, and that Plaintiff Montreal Manning's 42 U.S.C. § 1983 claims asserted against said Defendant, in his individual and official capacities, be DISMISSED, with prejudice, for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any

---

[5] Because the recommended disposition of the instant motion disposes of fewer than all claims and parties, it is not a final judgment and therefore, remains subject to revision at any time before conclusion of the case. FED. R. CIV. P. 54(b). Consequently, if Manning uncovers facts sufficient to support a dismissed claim, then he may file a motion for reconsideration of the court's dismissal of those claims, together with a proposed amended complaint. It goes without saying, however, that Manning may not dither in his efforts.

objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 6th day of September, 2023.

*/s/ Kayla Dye McClusky*
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE